IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:94-CR-00005-KDB

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| ANTHONY GEORGE ROSS, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant's "Renewed & Amended Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) . . ." (Doc. No. 86) and the Memorandum in Support of Motion for Compassionate Release (Doc. No. 94). Ross requests the Court grant his motion for compassionate release and reduce his aggregate sentence to Time Served. The Government opposes the motion. (Doc. No. 95). Having carefully reviewed Ross's motion and all other relevant portions of the record, the Court will grant the motion and reduce Ross's aggregate sentence to 382 months of imprisonment for the reasons explained more fully below.

### I. BACKGROUND

In May 1994, Ross was one of two defendants charged in a nine-count superseding bill of indictment filed in the Western District of North Carolina arising out of two armed bank robberies in Hickory, North Carolina. (Doc. No. 29). The nine offenses included conspiracy to use a firearm in crime of violence/conspiracy to commit armed bank robbery and bank theft, in violation of 18 U.S.C. § 371 (count 1); taking money from bank by force and aiding and abetting the same, in violation of 18 U.S.C. §§ 2113(a) and 2 (counts 2 & 6); armed bank robbery, in violation of 18

1

U.S.C. § 2113(d) (counts 3 &7); use and carry of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (counts 4 & 8); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (counts 5 & 9).

A jury found Ross guilty on all nine counts. Trial evidence showed that Ross, along with his co-conspirator Melvin Ramseur, robbed the first bank on October 19, 1993. (PSR, Doc. No. 76 ¶ 5). Ross was armed with a Haskell .45 caliber semi-automatic pistol and Ramseur was armed with a knife. *Id.* Both wore ski masks pulled down over their heads. *Id.* The second robbery occurred a week later on October 27, 1993. Again, Ross was armed with a pistol and wore a ski mask to cover his face. *Id.* ¶ 7. In total, Ross and Ramseur stole approximately $21,000. *Id.* ¶¶ 5, 7. During both robberies, Ross brandished his weapon and threatened to hurt or kill the bank employees and customers if they did not do as they were told. *Id.* ¶¶ 6, 8. Ross and Ramseur forced the employees and customers into the bank vaults and closed the vault doors before leaving the bank, and during the second robbery Ross punched one bank employee in the face, breaking her nose. *Id.* ¶¶ 6, 8. At Ross's trial, Ramseur testified that Ross organized and led both robberies. *Id.* ¶ 9.

As outlined in his Presentence Investigation Report, Ross qualified as a career offender under U.S.S.G. § 4B1.1 due to his prior convictions of robbery with a firearm and common law robbery. Based on his career offender status, the United States Probation Office calculated a total base offense level of 34 for all but the § 924(c) offenses. When combined with a criminal-history category of VI, the resulting guidelines range (which was mandatory at the time) called for a sentence between 262 and 327 months in prison. Consistent with precedent at that time, the Court "stacked" Ross's § 924(c) sentences, resulting in a consecutive term of 5 years in prison for the first § 924(c) conviction and a consecutive 20 years in prison for the second § 924(c) conviction, for an aggregate consecutive term of 25 years in prison on the § 924(c) convictions alone.

Accordingly, the Court sentenced Ross to 294 months in prison for the bank-robbery, § 371 conspiracy, and the felon-in-possession offenses, and a consecutive term of 25 years in prison for the § 924(c) offenses. This resulted in an aggregate sentence of 594 months. (Doc. No. 51).

Ross first moved for compassionate release in July 2020, but his motion was denied without prejudice for failure to exhaust his administrative remedies within the BOP. (Doc. No. 84). Now before the Court is Ross's second motion for compassionate release, (Doc. No. 86), and the Federal Public Defender's Office Memorandum in Support of Defendant's Motion, (Doc. No. 94).

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, Congress has provided a few exceptions to this general rule. One such exception is a motion for compassionate release. Before the passage of the First Step Act, district courts were only permitted to reduce a term of imprisonment on motions for compassionate release made by the Director of the BOP. Now, a court may entertain a motion filed by a defendant. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**—The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>    (i)     extraordinary and compelling reasons warrant such a reduction

3

> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).[1]

Despite the statute's reference to "applicable policy statements," there is currently no applicable policy statement governing compassionate release motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). "The only policy statement that could possibly be 'applicable'" is U.S.S.G. § 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *Id.* at 282 (emphasis added). Section 1B1.13 applies only to BOP-filed motions. As a result, district courts may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.* Still, the Fourth Circuit has recognized that Section 1B1.13 provides helpful guidance to courts in determining what constitutes "extraordinary and compelling reasons." *Id.* at 282 n.7; *United States v. High*, 997 F.3d at 181, 186 (4th Cir. 2021).

Even if a court finds that a defendant has demonstrated extraordinary and compelling reasons, the Court must consider the § 3553(a) sentencing factors "to the extent that they are applicable" before granting release. 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training,

---

[1] The Government does not dispute that Ross has exhausted his administrative remedies as required under the statute. Therefore, the Court will not discuss the exhaustion requirement and deems that the Government has waived that defense. *See, e.g.*, *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020) (holding the administrative exhaustion requirement is non-jurisdictional).

medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). Furthermore, a defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g., United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

### III. DISCUSSION

*A. Extraordinary and Compelling Reasons*

Ross argues that the severity of his stacked § 924(c) sentences coupled with the enormous disparity between that sentence and the sentence he would receive today constitute extraordinary and compelling reasons warranting compassionate release. On December 21, 2018, the President signed the First Step Act into law. In addition to the amendments to 18 U.S.C. § 3582(c) outlined above, the First Step Act revised § 924(c)(1)(C). Prior to the First Step Act, a second or subsequent count of conviction under § 924(c) triggered a higher mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count of conviction. *McCoy*, 981 F.3d at 275. This was so because, in *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court held that, even when multiple counts under § 924(c) were in the same indictment, the conviction on the first count did not have to be final before the mandatory increases and stacking provisions were triggered. *Id.* Thus, at the time Ross was sentenced, a defendant with two or more counts in one indictment was subject to a mandatory minimum of five years on the first count and twenty years on the second count.

The First Step Act revised § 924(c)(1)(C) by providing that the higher penalty for a "second or subsequent count of conviction" under § 924(c) is triggered only if the defendant has a prior § 924(c) conviction that had "become final." § 403(a), 132 Stat. at 5222; *McCoy*, 981 F.3d at 275.

5

The Act further specified that the amendments to § 924(c) shall apply to any offense that was committed before the date of enactment of the Act if a sentence for the offense has not been imposed as of such date of enactment. In other words, the amendments made to § 924(c) by the First Step Act are not retroactive.

In *McCoy*, the Fourth Circuit affirmed the holding by a district court judge that the gross disparity between the sentences the defendants received and the much lower sentences they would receive today (due to the amendments made to § 924(c) by the First Step Act) constituted extraordinary and compelling reason to reduce their sentences. Here, if Ross were sentenced today after the amendments made by the First Step Act, his aggregate sentence for his § 924(c) counts would be reduced from 300 months to 120 months—at least 15 years shorter than his current sentence. In light of the Fourth Circuit's decision in *McCoy*, the Court finds that Ross has exhibited "extraordinary and compelling" reasons that support consideration of a reduction in his sentence.

*B. Section 3553(a) Factors*

Next, the Court must consider the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Ross gives six factors that support a reduction in his sentence to Time Served: (1) the applicable guidelines range if he were sentenced today; (2) the need to avoid unwarranted sentencing disparities; (3) his "youthful criminal history"; (4) his age today; (5) his rehabilitation while in BOP; and (6) his strong family support.

As to the first factor, the Court agrees that the applicable guidelines range that would apply under current law weighs in favor of a reduction in Ross's sentence. As referenced above, the required consecutive statutory minimum for his § 924(c) convictions drops from 300 months to 120 months. When combined with the career-offender guidelines range of 262 to 327 months, the

6

result is an aggregate guidelines range of 382 to 447 months.[2] Additionally, this range is now advisory—not mandatory as it was at the time Ross was sentenced—and the Court may take into account the effect of the 120-month consecutive sentence minimum in determining the appropriate sentence on the remaining counts. In the Memorandum in Support, Ross requests his sentence be reduced to Time Served because he has already served at least 370 months and "[w]hen the BOP updates his good-time credits, [he] will likely have served very close to the low-end sentence of 382 months under the advisory range." (Doc. No. 94, at 11). However, the Court has confirmed with the United States Probation Office that Ross as a total of 371 months of BOP credited time, which includes his good-time credits. Thus, the current applicable guidelines range and Ross's BOP credited time weigh in favor of a sentence reduction, although not to a sentence of Time Served.

The Court also agrees that Ross's second proposed factor—the need to avoid unwarranted sentencing disparities—weighs in favor of a sentence reduction in this case. The First Step Act's changes to the law "will inevitably lead to disparities between individuals sentenced prior to the rule and those sentenced after it comes into effect." *United States v. McLeod*, 972 F.3d 637, 644 (4th Cir. 2020). The need to avoid unwarranted sentencing disparities will not always counsel in favor of a reduced sentence in cases like Ross's where the § 924(c) charges were stacked. However, in light of the extraordinary overall sentence imposed on Ross, the Court finds that the need to avoid unwarranted sentencing disparities counsels in favor of a reduced sentence in this particular case. *See McCoy*, 981 F.3d at 277-78.

---

[2] The Memorandum in Support of Motion for Compassionate Release incorrectly states that the career-offender guidelines range is 262 to 387 months and that the aggregate guidelines range is 382 to 507 months. (*See* Doc. No. 94, at 10).

7

However, Ross's third argument in favor of a reduction—that his "youthful criminal history dramatically increases his advisory guidelines range"— is not persuasive. Ross's career-offender enhancement was based upon two prior robberies, committed one month apart, when he was 22 years old. Ross asserts that the career-offender enhancement raised the applicable guidelines range from 188 to 235 months to 262 to 327 months (Doc. No. 94, at 14-15), and that the Court should consider his youth at the time of the offenses and find that a sentence at or below the low end of the advisory guidelines range is appropriate. In support of his argument, he cites to studies concluding that those under the age of 25 years old "may not gain full reasoning skills and abilities" as well as a statistic purporting that 53% of career offenders sentenced in 2020 received a variance, with 97.5% of the variances being below the career-offender range. However, Ross was 32 years old at the time he committed the underlying offenses in this matter, showing that despite his youth at the time of his prior convictions, he still chose to reoffend by committing two armed bank robberies a decade later. As to the percentage of career offenders that received variances, the Court has no information as to why a particular variance may have been appropriate in those cases and does not find that statistic persuasive here.

On the other hand, the Court agrees that the fourth factor—Ross's current age of 60 years old—suggests a lower likelihood of recidivism and weighs in favor of a sentence reduction. As the Fourth Circuit has recognized, "the risk of recidivism is inversely related to an inmate's age," *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014). The Sentencing Commission's study cited by Ross shows that the reconviction rate drops from 48.5% for those under 21 to a rate of 11.4% for those over 60 and only 6.5% for those over 65. United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017), at 23, available at

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf; *see also* (Doc. No. 94, at 16).

Evidence of post-sentencing rehabilitation—the fifth factor in support of Ross's motion—is neutral at best. While he has completed a number of educational programs and work assignments, they are not so extraordinary given the amount of time he has been imprisoned. Additionally, they are counter-balanced by the 16 disciplinary infractions he incurred while in the BOP, including six citations for possessing drugs or alcohol or other intoxicants as recently as July of 2020.

The final factor Ross points to in support of his release is his familial support upon re-entry into the community. Upon release, Ross plans to reside with his wife in Hickory where he will immediately begin working with her commercial cleaning business. He will also have the opportunity to "learn a trade" from his father-in-law, who installs pumps and septic tanks. (Doc. No. 89). The Court agrees that this is a favorable factor.

In addition to the above factors, the Court must consider the nature and circumstances of the offense conduct. Ross was the leader and organizer of two armed bank robberies. He terrorized both employees and customers by locking them in the bank vault and punching a female teller in the face, breaking her nose. Such offense conduct, especially in light of Ross's criminal history, does not warrant a sentence below the guidelines range that would apply if he were sentenced today.

On balance, the Court finds that a sentence at the bottom of the aggregate guidelines range if he were sentenced today (382 months) is sufficient, but not greater than necessary, to satisfy the § 3553(a) factors. The factors do not support a variance from what the applicable guidelines range would be today.

## IV.   ORDER

For these reasons, Defendant's "Renewed & Amended Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) . . .," (Doc. No. 86), is **GRANTED**. Defendant's aggregate sentence is hereby **REDUCED** to **382 MONTHS OF IMPRISONMENT.**

It is further ordered that Defendant's Pro Se Motion to Appoint Counsel to assist with his motion, (Doc. No. 92), is **DENIED** as moot in light of the Federal Public Defender's Office's assistance through the filing a Memorandum in Support of Defendant's Motion.

**SO ORDERED**.

Signed: September 2, 2021

Kenneth D. Bell
United States District Judge